( Decided December 3rd, 1862.)

---

JOHN EVERETT, Administrator of JOHN S. TOUGH, *vs.* WILLIAM AVERY, *et al.*

Under Art. 1, of the Code of Public Local Laws of this State, secs. 99 to 103, the personal estate of an individual or corporation, indebted in the manner therein specified, is subject to the claims of the creditor, before any proceedings are instituted, or adjudication had, as provided by the law for satisfaction. This constitutes, in effect, an absolute lien upon the property.

In the event of the death of the individual debtor, before any proceedings have been instituted under the law, the lien so survives, that it can be enforced against the property of the deceased debtor, in the hands of his administrator; or, in other words, the property passes into the hands of the administrator charged with the lien.

In a general sense, all the personal effects and estate of a deceased devolve upon his administrator, after letters granted, to be administered and distributed under the law and orders of the Orphans' Court, in such case provided; but the law creating the lien in this case, is special in its purpose and remedy. To perfect and enforce it, but one mode is given, and that in the Circuit Court for the county.

Questions of priority of claims, as between parties claiming a lien under the Art. of the Code above referred to, and one claiming a mortgage lien set forth in the answer, do not properly arise under a motion to dissolve an injunction and for the appointment of a receiver.

APPEAL from the Equity Side of the Circuit Court for Allegany county.

The appeal in this case is from two orders of the Circuit Court for Allegany county, sitting as a Court of Equity, the first passed on the 28th of March 1862, granting an injunction, and the second passed on the 21st of April

1862, refusing to dissolve said injunction, and appointing receivers.

The bill of complaint and petition of the appellees, was filed on the 26th of March 1862, and the answer of the appellant on the 7th of April following. The bill alleges that John S. Tough, deceased, was at the time of his death, and had been for some years previous, engaged in mining coal, in Allegany county, Maryland, and that he died intestate in September 1861, largely indebted to the several complainants, and to others in his employ, for wages then due them for work and labor done for him in his said business of mining, and which had been due and owing to them respectively for the space of more than thirty days preceding his death; and then proceeds to set forth specially the indebtedness to each of the complainants, the account of each against the said deceased being exhibited with the bill, showing in detail the items of said indebtedness. The bill further charges that administration upon the personal estate of said deceased had been granted by the Orphans' Court of Baltimore city, to John Everett, of Allegany county, who had taken possession of said personal estate, and advertized the same for sale, "without any regard or respect to the rights or liens" of the complainants thereupon, which they claim and set up under the provisions of Art. 1, secs. 99 to 103, of the Code of Public Local Laws; "that the estate of the said deceased is utterly and hopelessly insolvent; that the only hope or prospect the petitioners have of securing their said claims, is in enforcing the lien upon the personal estate of the said John S. Tough, deceased; and that if the said personal estate is permitted to be sold by the said administrator, the petitioners will, in all probability, lose their entire claims, and that the danger of losing their said claims is imminent and pressing. The prayer of the bill is for an

injunction and the appointment of a receiver, and for general relief.

The answer of the defendant admits, as alleged in the bill, the death and intestacy of the said John S. Tough, that previous to his death, he had been engaged in the business of mining, in Allegany county, that letters of administration upon the estate of the said deceased had been granted to the respondent, his proceedings as administrator, and the insolvency of the estate of his intestate. As to the other material allegations of the bill, the defendant neither admits nor denies them, but puts the complainants to the proof of the same.

The answer then charges: "That John S. Tough, in his lifetime, purchased of the defendant three undivided fourth parts of certain mining and leasehold rights and privileges acquired by this defendant from Douglas Percy and others, lessees of John Neff, under an agreement of lease bearing date the 13th of May 1854, filed with the answer as exhibit 'A;' that the said John S. Tough also purchased from the defendant, at the same time, certain improvements, fixtures and personal property adapted to and required for the operations of mining, including about fifty mining cars, railways in and from the mine to the railroad of the Cumberland Coal and Iron Company, load-house, about thirty sets of mining tools, about three horses, one mule, two sets of weigh scales," &c., (a schedule whereof is at said mine,) "for the sum of six thousand dollars, as will appear on reference to a copy of the assignment therefor, herewith filed, marked exhibit 'B,' of which said sum the said John S. Tough has paid to this defendant all except the amount of two promissory notes herewith filed, which are wholly due and unpaid, and were secured to be paid, or intended so to be, by a mortgage of all of said property so sold as aforesaid by this defendant to the said John S. Tough, bearing date the fourth day of December

1857, an official copy of which is herewith filed, marked exhibit 'E,' and which said two promissory notes and mortgage were given to secure the payment of the balance of purchase money remaining unpaid, as aforesaid." The defendant, in his said answer, further charges: "That as to the said three-fourths of the said mining tools," &c., "he has and is entitled, by virtue of his deed of mortgage aforesaid, to the possession thereof, and a lien thereon for the payment of the said two promissory notes, and that his said lien is prior and superior to the liens sought to be established by the complainants.

By a subsequent agreement, signed by the solicitors of the complainants and defendant, filed on the 18th of April 1862, it was agreed that the motions to dissolve the injunction and for the appointment of a receiver, should be submitted and argued before the Court, and "that for the purpose of obtaining a decision upon both of said motions, it shall be assumed and admitted that the claims of the plaintiffs or petitioners, as alleged in their petition, are to be regarded and considered as proved, as alleged in said petition. After the decision of the Court is announced, (in case the same is in favor of said petitioners,) it is further agreed that no decree shall be actually passed until the claims of said petitioners are proved in such manner as the Court may prescribe."

On the 21st of April 1862, the Court below (WEISEL, J.) passed the following order:

"The motions to dissolve the injunction heretofore granted in this cause, and for the appointment of a receiver, have been argued together, and very ably, by the counsel on both sides. Whatever doubts arose when the injunction was ordered, have been dispelled by the argument, and by further reflection and consideration. The grounds taken in the answer against the injunction and the appointment

of a receiver, will be disposed of by considering the following points:

"First.—Does that portion of Article 1st, of the Code of Public Laws of the State, embraced in the sections from 99 to 103, inclusive, under which the petition in this cause has been filed, and these proceedings had, create a lien upon the personal estate of an individual or corporation indebted in the manner therein specified? There is no express language so declaring or creating a lien, in the sections referred to, but in construing them together, the implication is too strong to be resisted. The object of the law is to afford security to certain creditors for their claims, and to effect this, it authorizes certain proceedings to subject all the personal estate of the debtor to their payment, and provides for their priority over certain other debts and liens. It goes further, and in section 103, makes it the duty of any sheriff or coroner who may have an execution or attachment against the property of such debtor, to exempt from the execution in his hands, and from levy, a sufficiency of the property to pay such indebtedness, and diligently to inquire whether such indebtedness exists; and subjects his official bond to suit for any damages suffered by them, in consequence of his neglect or refusal so to inquire, and so to exempt from execution. This proceeding on the part of the sheriff is required at his hands in cases where no proceedings have been instituted for the appointment of a receiver, or to perfect the right the creditor may have under the law. The property, therefore, is subject to the claims before any proceedings are instituted or adjudication had, as provided by the law for satisfaction, and this, it is conceived, operates an absolute lien upon the property.

"Secondly.—A lien being thus created, the next question that arises in the case is, whether, in the event of the death of the individual debtor, before any proceedings have been

instituted under the law, the lien so survives that it can be enforced against the property in the hands of his administrator; or, in other words, does the property pass into his hands discharged from the lien?

"The claims provided for in the law, are such as arise upon contract, and the general rule is, that in contracts the right of action survives the death of a party bound or liable, and can be enforced against the administrator. This, however, is the case of a lien attaching to property that has passed into the hands of an administrator, and no reason can be perceived why it should be regarded in a light different from that which attends every other case of lien. It would not be pretended that if the property were bound by a bill of sale or mortgage, it would pass to the administrator, discharged from it. The administrator takes it *cum onere;* otherwise the very object of the law would be defeated by the death, and contractors entering into service, and furnishing materials, one day, upon the faith of the law and the security it afforded for their engagements, might, in a few days afterwards, by the death of the employer, be defeated of all their rights arising under the law. One of the considerations which enter into an arrangement for security, is a provision or guard in case of death. In the absence of such a security, the law disposes of the estate of the deceased in its own way. And the authorities cited are in support of this view. That in 10 *Peters,* 596, (*Brent, use of U. S., vs. Bank of Washington,*) is regarded in point. There the lien upon bank stock was enforced against the administrator of the deceased holder, and by the appointment of a trustee to make the sale. And although the orders in that case were based upon an agreement of parties, that agreement was regarded by all the counsel, and by the high tribunal that decided the cause, as in conformity with the rules and principles of law governing in a case in that predicament. The leading case

relied on, *contra*, is the one cited from 1 *Wm. Bl.*, 284, (*Stevens vs. Evans, et al.*,) in which a distress warrant was issued against an administrator, to enforce the payment of poor-rates due by a decedent. This does not, in fact, establish a different doctrine, but rather concedes the view taken by this Court; for one of the judges regarded the matter sought to be enforced, as a *quasi* offence, and not a debt; and, on that account, gave the opinion that the remedy only reached the offender, and not his representative. The other learned judge expressed his doubts as to the character of the claim, but was not disposed to subject the administrator to the warrant of distress without a previous summons. For these reasons, I regard the property as subject to the lien in the hands of this administrator.

"Thirdly.—How is this lien to be enforced? It is contended that the property, being in the hands of an administrator, it cannot be disturbed, but whatever rights the petitioners have, must be adjudicated in the Orphans' Court that granted the letters.

"In a general sense, all the personal effects and estate of a deceased, devolve upon his administrator, after letters granted, to be administered and distributed under the law and orders of the Orphans' Court, in such case provided. But this does not deprive any one who has a specific lien or claim upon the property, of his legal rights or remedies, except where the law itself may provide otherwise. The law creating this lien is special in its purpose and in its remedy. To perfect and enforce it, but one mode is given, and that in the Circuit Court for the county. It cannot be perfected and placed in a condition to be satisfied and paid, without the action and judgment of the Circuit Court, the tribunal specified in sec. 100, which also provides against any delay in trying and settling the claims presented, if denied or disputed. Under the testamentary system, no such proceeding could be entertained by the Orphans'

Court. Nor could the claimant so prove and establish his claim as an absolute lien against the assets of the deceased, as to secure his priority, by any of the rules provided by that system. He can only do it, in the judgment of this Court, in the mode and manner provided for by the law which creates the lien. And this being a public local law, it prevails over the public general law, if a conflict arises between them.

"Our insolvent system has been cited and relied on as illustrating the law in this case in favor of the administrator. By the terms of the insolvent laws, and the decisions upon them by the Court of Appeals of the State, all the property of the insolvent passes to the trustee, but he takes it not only with the liens in all their order and effect upon it, but with full provisions for their ascertainment and allowance. How far these laws, being of a public general nature, would place the property involved in this controversy in the hands of a trustee, in case of insolvency, would remain to be considered when such a case should arise.

"The question as to the priority of the claims of the petitioners, if established, over certain other debts and liens specified or referred to in sec. 102, or over the mortgage set up by the defendant in his answer, does not arise at this stage of the controversy, and need not now be adverted to, except simply to state that if such mortgage were declared a priority, that would not arrest the appointment of a receiver on claims admitted or proved, inasmuch as the surplus, at all events, would be bound by the lien, and the same proceedings would be necessary to enforce the lien against the property.

"Entertaining these views, the Court will overrule the motion to dissolve the injunction, and will proceed to appoint a receiver, and pass the necessary decree in the premises, whenever the issues presented by the answers, on the claims exhibited with the petition, shall have been tried

and disposed of, and the existence of said claims, or any of them, shall have been determined."

The cause was submitted to the Court, on notes filed by both sides.

*William Walsh* and *G. A. & C. B. Thruston*, for the appellant:

Art. 1, secs. 99 to 103, of the Code of Public Local Laws, give no lien *per se*. A lien attaches to the *thing*, and follows it into the hands of all persons. It is a property in the thing. But the Code, as above, merely gives a priority of payment, to be worked out as against the employer, through the agency of a receiver, selling and bringing the proceeds in for distribution. If a lien exists, the Court, and not the words of the Code, must make it. You cannot go beyond the strict words of the law against creditors. The 103rd section does not apply to a case where no petition is filed. The same construction would extend it to a case, where there was no default of the employer by the lapse of thirty days. It is a forfeiture of the employer's right of control of his property, and cannot be extended. The sheriff has no power to ascertain the indebtedness. He cannot summon a jury or examine witnesses. He has no means of preventing collusion between the employer and employees. What is the execution creditor to do, if by collusion the employer and employees assert an indebtedness to the latter equal to the whole property? The law will not destroy rights, without giving means of contesting the asserted claims of employees. Moreover, the sheriff could not have an execution against Tough's goods after his death, so that the section does not apply to this case.

Compare Stat. 8 Ann, ch. 14, sec. 1; 2 *Tidd's Pr.*, 1014; *Waring vs. Dogberry*, 1 *Str.*, 97; *Lee, et al., vs. Lopes*, 15 *East.*, 230; *Brandling vs. Barrington*, 6 *Barn. & Cress.*, 467.

The Act of Congress of March 3rd, 1797, sec. 5, creates no lien. *U. S. vs. Fisher,* 2 *Cr.,* 390. *U. S. vs. Hooe,* 3 *Cr.,* 90. Laws against common right, are confined to their strict terms. *Hooper vs. Mayor & C. C. of Balto.,* 12 *Md. Rep.,* 465. *Warner vs. Fowler,* 8 *Md. Rep.,* 25. Special privileges are confined to the very case made by the Act conferring them. *Shivers vs. Wilson,* 5 *H. & J.,* 130. *Kerr vs. State, use of Levy Ct.,* 3 *H. & J.,* 560.

Under the mechanic's lien law of 1835, ch. 205, which, by the Act of 1845, ch. 287, is to be construed as a *remedial statute,* conferring general jurisdiction, the lien must rest on the very terms of the law, which must be literally complied with. *Greenway vs. Turner,* 4 *Md. Rep.,* 296. *Carson vs. White,* 6 *Gill,* 27. *Thomas vs. Barber,* 10 *Md. Rep.,* 381. *Hess, Reid, et al., vs. Poultney & Brown,* 10 *Md. Rep.,* 257. *Denmead vs. Bank of Balto.,* 9 *Md. Rep.,* 179. *McKim & Kennedy, vs. Mason, et al.,* 3 *Md. Ch. Dec.,* 186. *Baker vs. Winter,* 15 *Md. Rep.,* 1. *Pue vs. Hetzel,* 16 *Md. Rep.,* 539.

Under the Act of 1845, ch. 176, the word *"machine,"* used in that Act, has been limited to apply to stationary machinery—so unwilling are the Courts to extend liens to *moveable* personal property. *New Eng. Car-Spring Co. vs. Balto. & Ohio R. R. Co.,* 11 *Md. Rep.,* 81. The law discourages secret liens. They make business dangerous, and destroy credit, the life of commerce. Where the possession of the property accompanies the lien, the evils do not exist. Equity never favors a lien or priority against creditors. *Am. Soc. of Lanc'r, ex-parte,* 6 *Ves.,* 99. *Ross, ex-parte,* 6 *Ves.,* 804. *Stamford Friendly Society, ex-parte,* 15 *Ves.,* 280. These authorities are to the effect, that such preferences should be brought within the very Act giving them, and show the reluctance with which equity yields to them against general creditors.

The portion of the Code relied on, only applies as be-

tween employer and employee. If that relation does not exist, there can be no case. The proceeding is based on a *personal default* of the employer, and seizes his property to prevent his making away with it. The administrator is not the employer. He could not be guilty of the default. Neither can he make away with the property. He takes it under the law, gives bond, and can only sell by order of the tribunal appointing him. He holds for all the creditors, according to their rights and priorities. The reason of the law fails as to him. It would be absurd to require his appointment, and then that the same system of law should give a right to take the whole estate out of his hands, without any fault alleged. An administrator cannot be called before a special tribunal, unless named in the Act creating it. *Ailway vs. Burrows,* 1 *Doug.,* 263. *Wiltshire vs. Lloyd,* 1 *Doug.,* 382. *Stevens vs. Evans,* 1 *Wm. Bl.,* 284. *Jenkins vs. Bryant,* 7 *Sim.,* 171. *Hale's Adm'r vs. Howe's Exc'r.,* 4 *H. & J.,* 448. Acts of 1791, ch. 68, and 1819, ch. 167, sec. 1. *Purviance vs. Glenn,* 8 *Md. Rep.,* 202. Act of 1805, ch. 110, sec. 10.

Upon the death of a party, the testamentary law fixes the rights of his creditors, and seizes upon his property, and no proceeding *in invitum* can be taken to get a lien or priority on it over other creditors. The rights vest *eo instanti,* like an act of bankruptcy, or petition in insolvency. *Bank of Md. vs. State,* 6 *G. & J.,* 230. *Heapy vs. Parris,* 6 *T. R.,* 368. A judgment cannot be docketed, under 4 and 5 Wm. & Mary, ch. 20, after a defendant's death, to get a preference on the personalty. *Douglas vs. Yollop,* 2 *Burr.,* 722. *Hickey vs. Hayter,* 6 *T. R.,* 384. *Hopwood vs. Watts,* 5 *Barn. & Adol.,* 1056. A *fi. fa.* cannot issue as before the death, so as to complete the lien. *Heapy vs. Parris,* 6 *T. R.,* 368. A right to a ship cannot be perfected in equity under the Registry Acts, after the death. *Hibbert vs. Rolleston,* 3 *Bro. C. C.,* 571. A lien which the

law, and not the contract of the party gives, must be perfected before the rights of other creditors intervene, or it cannot be asserted against them.    It is not a lien till every thing is done to make it so.  *Kinlock vs. Craig*, 3 *T. R.*, 119.  *Montagu on Lien*, 81, &c.    The right to obtain a lien, if proceedings were taken in time, is very different from a consummated lien, and does not entitle to a preference.    A landlord can distrain for rent and get a lien, but if he has not done it before the tenant applies for the benefit of the insolvent laws, he has no preference over general creditors.  *Buckey vs. Snouffer*, 10 *Md. Rep.*, 149.    So on a judgment, the creditor might issue a *fi. fa.*, and get a right to satisfaction out of the personalty, before all other creditors; but if he has not done it before his debtor's death, he must come in on a footing with other judgment creditors.    Before our statute of 1836, ch. 192, rent was only a specialty debt, and not a preferred claim over bonds and judgments, though the right to distrain existed.    The right of the landlord to distrain on the tenant's goods after his death, is no exception.    The goods are liable in respect of the *place* where they are found, and not in respect of the *person* to whom they belong.  *Anon.*  1 *Atk.*, 103.    It is not true that an administrator or the property in his hands, is liable for a duty cast by law upon his intestate.    He is not liable on covenants implied by law, *Adams vs. Gibney*, 6 *Bing.*, 656; nor is he liable on a penal statute, 1 *Ch. Pl.*, 91; nor for setting out tithes, 1 *Sid.*, 88; 1 *Wend.*, 40; nor for the default of the sheriff, *People vs. Gibbs*, 9 *Wend.*, 29.

Even if the petitioners could be relieved against general creditors, they cannot against the defendant as mortgagee.    The mortgage embraces all the property, as is stated in the answer and not denied.    It puts the title in the defendant, and constitutes him the legal owner.    He has the possession also.    No Court can disturb the possession of the legal owner, with equities supe-

rior to those of the parties seeking its aid. ' *Furlong & Miller vs. Edwards*, 3 *Md. Rep.*, 99. The Code, as relied on, does not divest property. It does not take Everett's property to pay Tough's debts. The mortgage existed prior to the work done. The claims filed show this. The claims of petitioners could not date back and take property belonging to another before they existed. When they began to work, they had notice of the mortgage by the recording of it. The 102nd section refers to liens created after the work begun, perhaps after a *lis pendens* under the law. Otherwise a mortgagee is in a dangerous way, if the mortgagor should turn miner after the date of the mortgage, and not pay his employees. He could cut down the whole security. See Const. of U. S., Art. 1, sec. 10; and 10 *Peters*, 596, *Brent, use of U. S., vs. B'k of Wash'n;* 1 *Peters*, 386, 440, *Conrad vs. Atlantic Insurance Co.;* 9 *G. & J.*, 408 to 412, *The University of Md. vs. Williams.*

Equity will not interfere with administrators in Maryland, by appointing a receiver. The Code does not give the Court the power, and general principles must govern the case. *Alexander vs. Stewart,* 8 *G. & J.*, 226. *Lee & Wife, vs. Price,* 12 *Md. Rep.*, 253. *Estate of Colvin,* 3 *Md. Ch. Dec.*, 278. *Ellicott vs. Warford,* 4 *Md. Rep.*, 80. *Blondheim vs. Moore,* 11 *Md. Rep.*, 365. Title can be made only through the administrator. *Smith vs. Wilson, Adm'r of Owens,* 17 *Md. Rep.*, 460. *Cecil, Adm'r of Owens, vs. Negro Rose,* 17 *Md. Rep.*, 93. *Grimes & Wife, vs. Talbott, et al.,* 14 *Md. Rep.*, 169. The appellees have no lien, and, at most, a priority in the general distribution, which they can assert by action on the bond. *Murray vs. Ridley's Adm'x,* 3 *H. & McH.*, 171. *Carroll vs. Norwood,* 1 *H. & J.*, 471. *State vs. Rogers & Wife,* 2 *H. & McH.*, 198. The State, in those cases, established its priority in that way, and the testamentary law then existing made no provision for it. It was a common law preference, as the Act of 1650

was repealed by the Act of 1692, as stated in 6 *G. & J.,* 223. Or such priority might be asserted under a general bill for distribution of assets. *Ward vs. Painter,* 2 *Beas.,* 85. *Barton vs. Tattersall,* 1 *Russ. & Mylne,* 237. *Wells & Miller, vs. Canton Co., et al.,* 3 *Md. Rep.,* 234.

The Code, vol. 1, Art. 1, sec. 2, makes the local law prevail over the general law, where there is a conflict. If there is any conflict here, the local law, giving the preference claimed, would incorporate itself into the testamentary system, as to this estate, and govern the distribution in the Orphans' Court, and authorize that Court to allow the appellees' claims. The construction insisted on by the appellees, would overturn the whole testamentary system, and nullify the proceedings of the Orphans' Court, which, by the general laws, have sole jurisdiction of testamentary affairs. The administrator's bond is to administer *according to law;* hence whatever rights or preferences *the law gives* a party, he can assert it in a suit on the bond. *Commonwealth, use of U. S., vs. Lewis,* 6 *Binney,* 266.

The administrator, defending the rights of all interested in the estate, is entitled to costs, as between solicitor and client, even if the orders are affirmed. *Compton vs. Barnes,* 4 *Gill,* 55. *Young, ex-parte.* 8 *Gill,* 285. *Nelson vs. Pierson,* 8 *Md. Rep.,* 300. *Young vs. Everest,* 1 *Russ. & Mylne,* 426. *Decker vs. Miller,* 2 *Paige,* 149. *Bennett vs. Going,* 1 *Molloy,* 529.

*Thomas Devecmon,* for the appellees:

1st. The appellees, upon the allegations of the bill, were entitled to the injunction. On this point we refer simply to the allegations of the bill, which, *if true in fact, as admitted to be,* and if correct in law, entitle them to the injunction. Are they correct in law? This inquiry properly arises on the argument of the second point, and will be there considered.

2nd. After the answer was filed, and after the agreement, the injunction could not be dissolved. The answer sets up three defences only. We will refer to them separately. The first of these is, that the sections 99 to 103, of Art. 1, of the Code of Public Local Laws, do not create a lien upon the personal estate. In view of the language of those sections, all argument here would be useless. The second defence is, that conceding the lien to be created, it was lost by the death of the party against whom it existed, as it was not asserted against him in his lifetime. The executor and administrator take the title of the decedents only, and are bound by whatever bound their decedents, and cannot assert any other control over the property of their decedents than the parties themselves could assert, if living. 2 *Wms. on Exc'rs*, 1410 and 1465, 3*rd Am. Ed. Hyde vs. Skinner*, 2 *P. Wms.*, 197. *Pollitt vs. Parsons*, 2 *H. & J.*, 61. *Allein vs. Sharp*, 7 *G. & J.*, 96 and 108. 10 *Peters*, 596, *Brent, use of U. S., vs. Bank of Wash'n.* This last case, it is humbly submitted, is conclusive on this point. It was a purely statutory lien, enforced against an administrator, which is identically this case. The case in 1 *Wm. Bl.*, 284, for the reason stated by the learned judge below, in his opinion, is not in conflict with our position. Besides, there can be no doubt about the right of distraining the goods of a deceased party in the hands of his executor or administrator. *Longwell & Ege, vs. Ridinger*, 1 *Gill*, 57. *Braithwaite vs. Cooksey*, 1 *Hy. Bl.*, 465. *Arch. Land. & Ten.*, 111. Code, vol. 1, Art. 93, sec. 91.

If, therefore, the lien is created by the law, and is not destroyed or lost by the death of the party, the third defence in the answer raises a question as to how the lien is to be enforced? We say, clearly in the mode provided by the statute giving the lien; and it could not be enforced in the Orphans' Court. The testamentary system does not authorize the administrator to pay such liens, unless they

be established in accordance with the statute. (See sec. 116, of Art. 93, of the Code.) *Miller, Adm'r of Pottinger, vs. Dorsey,* 9 *Md. Rep.*, 317. It is humbly submitted, that the *dictum* in 6 *G. & J.*, 230, is not correct in law, as attempted to be here applied. Besides, if the testamentary system, as contained in the Code, should be deemed in conflict with the Public Local Laws, the latter must prevail. Art. 1, sec. 11, of the Code of Pub. Gen. Laws.

3rd. If the appellees be correct as to the preceding points, viz., that they are entitled to a lien that can be enforced against the administrator, then the decree appointing receivers, was a necessary incident, and is undoubtedly the proper remedy. Code of Pub. Loc. Laws, Art. 1, sec. 99.

By THE COURT.—After mature consideration of the questions presented by this appeal, and an examination of the authorities cited in argument, this Court concurs with the Judge of the Circuit Court, in the opinion pronounced by him, and, for the reasons assigned in his opinion, this Court will pass a decree affirming the orders appealed from, and remanding the cause.

*Orders affirmed and cause remanded.*