JOHN EVERETT and JOSEPH DILLEY *vs.* THE STATE
OF MARYLAND, use of THOMAS J. McKAIG and
THOMAS PERRY, receivers.

*Duty of Receivers appointed under Article* 1, *sections
99–103 of the Code of Public Local Laws—Act of
1853, ch. 374—Practice—Measure of Damages—
Pleading.*

A. and others filed their petition in the Circuit Court for Allegany
county, under the Code of Public Local Laws, Art. 1, secs. 99–103,
alleging that T., had died largely indebted to them for wages due for
work and labor done for him, in his business of mining, and praying
for an injunction to restrain the administrator from selling the prop-
erty, and for the appointment of receivers. The injunction was granted,
and the administrator answered claiming the right to administer the
assets, and also a prior lien on the property, by virtue of a mortgage,
and moved for a dissolution of the injunction. The Court refused the
motion to dissolve, and passed an order appointing receivers. The ad-
ministrator appealed from the orders granting, and refusing to dissolve
the injunction, and appointing the receivers, and filed his appeal bond.
He then applied to the Court for an order requiring the receivers to
return the property, which was granted, and the property was delivered
to him. Upon appeal these orders were affirmed. HELD:

That it was the duty of the receivers to institute an action on the appeal
bond, immediately upon the affirmance of the order appointing them,
and no order of the Court directing them to do so, was required.

Under the Act of 1853, ch. 374, on an appeal from an order appointing a
receiver, if the party praying the appeal, shall give bond, according to
the provisions of the statute, the operation of the order is stayed until
judgment shall be pronounced by the appellate tribunal.

If on an appeal from an order appointing a receiver, the appellate Court
should affirm the order, and the thing on which the order was intended
to operate, shall have been consumed or disposed of, the complainant's
remedy is on the appeal bond, which was given for the express purpose
of indemnifying him from all loss and injury which he might sustain
because of the appeal.

The affirmance by the appellate Court of the order appointing the re-
ceiver, operates of itself a revocation of the order below, directing the
receiver to deliver the property to the administrator.

Everett and Dilley *vs.* The State, use of McKaig and Perry.

The measure of damages in the suit on the appeal bond, where the property has been disposed of, pending the appeal, is the value of the property at the time the appeal was taken.

An objection to a prayer that it assumes or fails to leave to the jury facts essential to the plaintiff's right to recover, unless taken at the trial below, cannot, since the Act of 1862, ch. 154, be urged in the appellate Court, as a ground for reversal.

In an action on an appeal bond, where the declaration assigns the breaches, a plea of *non damnificatus* is bad, as its only purpose is to compel such an assignment, and the only answer to it is a replication setting forth how the party has been damnified.

A plea is bad which professes to answer the whole declaration, and answers only a part.

APPEAL from the Circuit Court for Allegany County.

This was a suit brought upon an appeal bond, the conditions of which will be found set forth in the opinion of this Court. The breaches were assigned in the declaration. The defendants pleaded substantially the following pleas:

1st. That the receivers induced Neff to distrain upon and take the property for rent, under the distress of 8th May, 1862, and that he sold the same and thereby deprived Everett of the property.

2d. That Neff distrained upon the property on the 17th April, 1862. That Avery and others, by the agreement of the 22d April, agreed with Neff that he should abandon his distress and let the receivers sell the property, and that he should be paid his rent out of the proceeds, that in consideration thereof he abandoned his distress. That the receivers, after the filing of the appeal bond, delivered the property back to Everett on the 5th of May, and that Neff on the 8th of May, again distrained and sold the property.

3d. That the receivers procured Neff to distrain the goods on the 8th of May, for rent due from John S. Tough, deceased.

4th. That Tough died indebted to Neff for rent of certain coal mines, that after his death, and the appointment of Everett as his administrator, certain persons claiming to have

been employed by Tough, in his lifetime, as miners in getting out coal, filed a petition in the Circuit Court for Allegany county, under the provisions of Article 1, sections 99 to 103 inclusive, of the Code of Public Local Laws, that such proceedings were had, that on the 22d of April, 1862, the Court appointed McKaig and Perry receivers to take charge of the personal estate of the said Tough, and that upon their appointment and qualification, Everett delivered to them the personal estate of the said Tough, that Neff distrained upon the same for his rent; that the receivers and Neff agreed with the claimants in said petition, that he should abandon his distress, allow the receivers to sell the property, and that he should be paid out of the proceeds his claim for rent, and the balance should be paid to such of the claimants as should establish their claims thereto, that in execution of this agreement Neff abandoned his distress and delivered the goods to the receivers; that Everett appealed from the order appointing the receivers, to the Court of Appeals, and filed his appeal bond; that the Circuit Court thereupon passed an order directing the receivers to deliver to him as administrator as aforesaid, the goods and chattles of the said Tough, that said Everett was proceeding to sell said goods, but before he could sell the same, the said Neff, by the procurement of the receivers, sued out another distress warrant, and levied the same upon the goods and chattels remaining on the demised premises, and sold the same in satisfaction of the rent.

5th. *Non damnificatus* as to the receivers.

6th. *Non damnificatus* as to Avery and others, the claimants under the miners' lien law.

7th. That Neff distrained and sold part of the goods for rent due him; and as to the balance, that Everett sold them in due course of administration, under an order of the Orphans' Court, and has always been ready and willing to pay over the proceeds to the receivers.

8th. That Everett did not sell and convert the property to his own use.

9th. That the receivers recovered no costs in the Court of Appeals.

10th. That said Everett did not prosecute his said appeal with effect; that the orders were affirmed by the Court of Appeals; that the said Circuit Court passed an order directing the receivers to deliver the property back to Everett, which they did, and that the said order under which he received them is still unreversed and in full force and effect.

To these pleas the plaintiff demurred; the Court overruled the demurrer as to the first, third and fourth, on which issues were then joined, and sustained it as to the others.

The plaintiff asked the Court to instruct the jury as follows:

1st. That there is no evidence in the case from which the jury can find that Thomas J. McKaig and Thomas Perry, induced or procured the said John Neff to make the distress mentioned in the defendants' first, third and fourth pleas.

2d. That if the jury shall believe from the evidence in the cause, that the valuation or appraisement of the property in controversy made by Douglas Percy and Wm. Parker, as offered in evidence, was a fair valuation of the property at the time the same was made, and that the same was the value, then the plaintiff is entitled to recover in this action, the amount of said appraisement, deducting the amount paid by Everett to Wm. Parker, for keeping and preserving said property, if the jury should believe the said Everett did pay the same to said Parker, and also deducted the amounts paid by said Everett, as administrator, in the discharge of his duties as such administrator, if the jury shall find that he paid any such amounts.

And the defendants then offered the following prayers:

1st. That if the jury shall find from the evidence in the cause, that John S. Tough in his lifetime, was the tenant of John Neff, under and by virtue of the lease or agreement, between John Neff and Douglas Percy and others, and the assignments and modifications thereof, now in evidence; and

that said Tough departed this life largely in arrear, and indebted to said Neff, for rent due under said demise, and that the goods and chattels in controversy, were delivered to said Everett on said demised premises; and that said McKaig and Perry were receivers, as stated in the declaration in this cause, and that said Everett was administrator of said Tough, and that he as said administrator, received said goods and chattels from said receivers under the order of the Court in said cause of *Avery and others*, as petitioners; and that said rent still remained unpaid and in arrear. And that said Neff on the 8th day of May, 1862, issued a distress warrant, and thereby and thereunder took said goods and chattels on said demised premises, as and for a distress for said rent, so then due and in arrear, and that said goods and chattels when so taken, were remaining upon said demised premises, without the fault of said Everett, and that said Neff sold said goods and chattels under said distress, then the plaintiff cannot recover in this action for the goods and chattels so taken.

2d. That if the jury find the facts stated in the first prayer, and shall also find, that said McKaig and Perry or either of them, induced or procured said Neff to distrain and take said goods and chattels, then the plaintiff cannot recover for any goods so taken.

3d. That if the jury shall find from the evidence in the cause, that the said goods and chattels or any part of them, were taken by John Neff, under a distress for rent, by the inducement or procurement of said receivers or either of them, or that they or either of them consented to such taking, then the plaintiff cannot recover for any goods and chattels so taken.

4th. That if the jury shall find that said Neff distrained said goods and chattels as stated in their first prayer, and that said receivers knew of said distress warrant, or acquiesced in the same, then such consent or acquiescence is evidence, from which they may find that they procured or induced said Neff to distrain said goods and chattels.

5th. That if the jury shall find the facts stated in the first prayer, and shall also find, that said Everett afterwards brought suit against said Neff, for taking said goods, and that said receivers acted as attorneys for said Neff in said cause, and as such attorneys assisted him to defend the action of said Everett against him, and that said receivers admitted in the trial of said cause against said Neff, that they had consented to said agreement between Neff and Thomas Devecmon, as attorney for Avery and others, the petitioning creditors aforesaid, and received the goods from Neff under said agreement, then they may find that the said receivers consented to and procured the issuing of said distress.

6th. That if the jury find that said Everett, as administrator of said Tough, sold said goods and chattels, or any part of them under the order of the Orphans' Court of Baltimore city, and that such sale was fairly made, then the amount which they brought at such sale, is evidence that the amount for which they so sold, is the true value of said goods and chattels, and the jury may so find.

7th. That if the jury shall find that said Neff distrained part of said goods and chattels, and sold the same, and that such sale was fairly made, then the proceeds of such sale is evidence of the true value of said property so taken and sold, and the jury may so find.

8th. That the plaintiff cannot recover in this case:

1st. Because the receivers for whose use the suit is brought, have no interest in, or right of action on the bond declared on in said case.

2d. Because the said receivers are not parties to said bond declared on, nor embraced in the conditions of the same.

3d. Because the order directing the receivers to deliver the property in controversy in this action, to the defendant Everett, has not been reversed or set aside.

4th. Because the receivers have offered in evidence no order of the Court which appointed them, directing them to bring said action, and authorizing them to possess said goods.

9th. That if the jury shall find from the evidence in the cause, that under the lease and assignments and modifications offered in evidence, there was the sum of fourteen hundred and twenty-six dollars and eighty cents, due from John S. Tough, and that said Neff distrained for said rent on the 17th of April, 1862, on the goods and chattels in controversy, and that after the appointment of said receivers, the agreement between Neff and the petitioning creditors in the case of *Avery and others*, was entered into, and that said receivers assented to the same, and said Neff abandoned said distress, and said receivers took possession of said goods and chattels under said agreement, and subject to it, and that afterwards said goods were ordered by the Court to be delivered back to said Everett, by said receivers, and that said goods when so delivered back, were in and upon the said demised premises, and that within two or three days after the delivery of said goods to said Everett, the said Neff issued another distress warrant for the same rent, and seized upon a portion of the said goods and chattels, and that the same were on the demised premises, and that he sold the same for the said arrears of rent, and that the said Everett sued him in trespass for the taking of said goods, and that said receivers appeared as his counsel in said case, and conducted his defence as admitted in the trial of said case, that they assented to the said agreement, under which said Neff abandoned the first distress, and contended, that said Neff made the said second distress lawfully, and that said Everett had no right of action against him for so doing, and procured a verdict for said Neff in said action against him, for taking said goods and chattels, then the plaintiff cannot recover the value of said goods so taken by said Neff in this action.

10th. That if the jury shall find from the evidence in the cause, that the defendant Everett, as administrator of John S. Tough, deceased, under the order of the Orphans' Court of Baltimore city, sold at public sale on the — day of June, 1862, a portion of the goods, chattels and effects sought to be recovered for in this case, and that such sale was fair, then

the jury cannot allow for the goods and chattels so sold, beyond the amount produced by the sale, less the expenses incident to making said sale.

11th. That if the jury shall find from the evidence in the cause, that John Neff distrained on a part of the goods and chattels sought to be recovered for in this case, and sold the same for arrears of rent due to him by John S. Tough in his lifetime, under the lease and assignments and modifications offered in evidence, and that said goods and chattels so distrained, were in and upon the said demised premises, and that said Neff sold said goods and chattels at public sale, and that said sale was fairly made, the jury may find the proceeds of sale to be the true value of the property so sold by said Neff.

The Court granted the prayers of the plaintiff, and also the sixth, seventh and eleventh prayers of the defendants, and rejected the others. To this ruling of the Court the defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*Josiah H. Gordon,* for the appellants:

The suit was brought for the use of the receivers, but there is nothing in the declaration which assigns the breaches of the condition of the appeal bond, to show that they have been damnified in any respect whatever. The receivers were appointed for the benefit of Avery and others, creditors of Tough, who would contribute to the expense of the suit. The injunction was passed for their benefit. And therefore, when the bond provides for the indemnity of Avery, and all other persons entitled to the benefit of the decrees or orders, it manifestly refers to that class, and not to the receivers. The receivers are not parties to the suit. They did not join in the petition, no process was prayed against them, and no part of the property or its proceeds has been distributed or awarded

to them; and therefore, they have not the slightest interest, and consequently, have received no damage, and cannot sue upon the bond. They are the mere agents of the Court to hold the property under its orders, and subject to its control, and without its order they can do nothing. *Edwards on Receivers*, 127, 128, 129; *Merritt vs. Lyon*, 16 *Wendell* 405, opinion of *Cowen, Justice; Freeman vs. Winchester*, 10 *S. & M.*, 577; *The Albany City Bank vs. Schermerhorn*, 9 *Paige*, 372; *Noe vs. Gibson*, 7 *Paige*, 513; *Brandon vs. Brandon*, 5 *Maddock's Ch. Rep.*, 287.

After the receivers were appointed, Everett filed the appeal bond, and an order was then passed, directing the receivers to return the property to Everett, and he received the property back again under this order; and this order was never revoked or rescinded, and remained in force, and the receivers nor any other person, could sue for the property, so long as this order remained in force and unrevoked.

The only interest the receivers could have in the case, was the commissions which the Court might allow them for their performance of the trust reposed in them by the Court.— *Rachel Colvin's case*, 3 *Md. Ch. Dec.*, 278, 300, 301, 302. But whether they would be allowed commissions at all or not, was not decided when this suit was brought, and could only be decided by the Court which appointed them in the Equity case. *Teackle, Trustee, vs. Crosby & Bevan*, 14 *Md. Rep.*, 14.

Besides, the condition of the bond is "to indemnify William Avery, James Reed, William Snyder and John Montgomery, and all other persons who may be entitled to the benefit of said decrees or orders, from all loss or injury they may sustain by reason of said appeal." Now this suit is not brought for the use of Avery or any of the parties named, and the receivers can only claim to come under the general clause of "all other persons who may be entitled to the benefit of said decrees or orders." But to bring themselves within this clause, they must show that they have sustained loss or injury, and

that they have not done. The bond is manifestly intended for the protection of the petitioning creditors and others who may become interested in the proceeding, as they then were in case of the establishment of their claims.

The declaration is defective because it does not state clearly and distinctly, that the receivers had executed such a bond as was required by the decree appointing them. It should be directly averred. 1 *Chit. Pl.*, 237, *and note; Steph. on Pl.*, 388.

It does not state what kind of a bond they executed, whether it was for one thousand or five thousand dollars, or what was the condition of it. They only state that it was " *approved as required by said decree.*" And what does that mean? Why simply, that the surety or sureties had been approved by the clerk or some one of his deputies; for the decree as they describe it, at the top of the page, shows that nothing was to be approved but the *surety or sureties.* And without filing such a bond as the decree requires, they had no right to the property; their filing such a bond was a condition precedent to the exercise of their powers as shown by the decree.

In regard to the pleas : The second plea being the first one ruled bad by the Court, presents the question as to the right of the plaintiff to recover in this suit the value of the property distrained and sold by Neff, under his warrant of the 8th of May. Neff justifies the taking under the distress for rent of the 8th May, 1862, and the agreement notwithstanding the taking under the former distress. Now it must be perfectly manifest, that if Neff's right to distrain for rent was superior to the rights of all the other parties to the suit, the exercise of that right, and taking of the property under it, must be a good defence to Everett to the extent to which it was exercised. It would be an absurdity to say that Neff had the right to take the property from Everett, and that Everett should still be held responsible for the value of it in this action.

The fourth plea which was ruled good, differs from this only in one material allegation, viz : that "*the said John Neff by the advice and procurement of the receivers, got out another warrant of distress.*" But that allegation was not necessary to present the irreconcilable inconsistency of the ruling of the Court in the two cases, as was intended by that prayer. There was nothing said in the trespass case about McKaig and ·Perry having procured the issuing of the second distress, and it could not have had any effect if it had been, for they were not parties to the trespass case.

The point is therefore fairly made by this plea, that if Neff had a right to execute the second distress, Everett must be discharged from responsibility in this case.

The fifth plea was good. The condition of the bond was not to pay money, but "*to indemnify Avery and others from all loss and injury which they might sustain by reason of said appeal.*" And the receivers who bring this suit show no mode by which they have been damaged, therefore the plea is good in this case. 1 *Chitty's Pleadings*, 485 ; *Holmes vs. Rhodes*, 1 *Bos. & Puller*, 638, 639, note (*a.*)

The receivers were not interested in the effectual prosecution of the appeal. They were relieved from responsibility when the appeal bond was filed, which operated as a *supersedeas* of the order to deliver to them the property, and the property taken back by Everett, as they state in the declaration, and nothing appears after, even to show that they could be damnified, therefore *non damnificatus* is a good plea as to them. *Andrus vs. Waring*, 20 *Johnson*, 162.

The tenth plea presents the question, whether the receivers could recover against Everett, who was holding the property under the order of the Court directing the receivers to deliver the property to him, while that order was still in force, and without an order from the Court directing him to deliver it back to them. They certainly could not. *Merritt vs. Lyon*, 16 *Wendell*, 405, opinion of Justice Cowen; *Noe vs. Gibson*, 7 *Paige*, 513; *The Albany City Bank vs. Schermerhorn*, 9 *Paige*, 372; *Rachel Colvin's case*, 3 *Md. Ch. Dec.* 278.

There was error in granting the plaintiff's second prayer, which instructs the jury "that if *they found the valuation or appraisement made by Percy and Parker, was a fair valuation of the property, then the plaintiff is entitled to recover in this action the amount of said appraisement, deducting the amount paid by Everett for Neff.*" This prayer leaves out all the material facts except that of value, and takes from the jury the right to find:

First. Whether the appeal had been prosecuted with effect or not?

Secondly. Whether the property in controversy belonged to Tough or not?

Thirdly. Whether the receivers had been appointed or not?

Fourthly. Whether they had given bond or not?

Fifthly. Whether Neff had a right to take the property on his distress or not?

Sixthly. Whether the petitioning creditors of Tough had a right to the property or not?

Seventhly. Whether the order directing the receivers to give up the property to Everett, was still in force or had been revoked?

Eighthly. Whether Everett had delivered the property back to the receivers or not?

It certainly cannot be pretended in a Court of common law, where juries are regarded as an institution, that they may be ignored, and the whole question of fact decided by the Court. *Beall vs. Pearre, Adm'r of Brown,* 12 *Md. Rep.,* 568.

And the Act of 1862, chap. 154, does not relieve this case from this objection. This being a statute changing the law as it was previously, and changing the common law as it had existed since a bill of exceptions was granted by the Statute of Westminister, should not be extended beyond the letter of the law by interpretation. The Act of 1862, provides, that the prayer should not be defective *by reason of any assumption of any fact.* That is, any one fact.

But that is not this case. This prayer instructs the jury that they may find for the plaintiff, if one fact is proven, when it requires a dozen facts to make the case.

The only safe rule is to confine it to the language of the Act, which limits it to a single fact.

It does appear upon the record in this case, that all these material facts were controverted. And that objection was taken to these facts at the trial, as provided by the latter clause of the Act of 1862. They were controverted by the pleadings, by the prayers of the defendants, and by the rebutting evidence, and it would be absurd to say in such a case, that it does not appear from the record that such objection was taken at the trial, substantially. *Bradford vs. Jones,* 1 *Md. Rep.,* 372.

*Thomas J. McKaig, Jr.,* and *Thomas J. McKaig,* for the appellees:

No error can be imputed to the Circuit Court by reason of the rejection of the defendants' first prayer. The question involved in the prayer is simply this: Upon the passing of the decree by the Circuit Court for Allegany county in the case of *Avery, et al., vs. Everett, Adm'r of Tough,* on the equity side of that Court, the receivers appointed thereunder were put in possession of the property. If Everett had permitted that possession to continue, Neff could not have disturbed it, or distrained upon the property, even if the agreement between him and the lien claimants had not been entered into, because the property was *in custodia legis;* and the lien claim of the claimants had priority over the claim of Neff for rent. Everett, however, filed the appeal bond sued upon in this case, and obtained from the Circuit Court an order transferring the possession of the property to himself, thereby enabling Neff to pursue his remedy of distress, a right that accrued and vested in Neff solely, by reason of this change of possession, effected by the act of Everett himself. Is Everett therefore now to be relieved from a responsibility cast upon him by this very act of his own, committed without the con-

sent and in direct opposition to the wishes of the receivers? We certainly think not. In *Hurlstone on Bonds,* (*9th Vol. Law Library,*) *mar. pag.* 49, the principle is distinctly laid down, that an obligor in a bond cannot discharge himself by showing an impossibility of performance, *arising from his own act.* The persistent attempt by the defendants below to establish some collusion between the receivers and Neff, relative to this second distress, proves that they recognized the truth of this principle. Neff says that " he never had any conversation with either of the receivers *as counsel or otherwise,* in relation to the second distress of the 8th May, 1862. That he issued it under the direction of Mr. Devecmon as his counsel," and this is the whole of the evidence in the record in relation to that part of the case.

The second, third, fourth and fifth prayers of the defendants, were properly rejected, because there was no evidence to sustain them. The sixth and seventh prayers of the defendants were improperly granted, because the evidence is that the property would not sell separately, but as a mining concern; a sale separate from the lease, was no evidence of its value.

This prayer was properly rejected for the additional reason, that this proceeding by distress, upon the part of Neff, was as regards these receivers simply *inter alios acta,* and they were in no manner bound by it.

The eighth prayer of the defendants should not have been granted:

Because by the 108th section, Article 16 of the Code, any person interested in a bond taken in the name of the state may sue upon it, and certainly these receivers, who were entitled to the possession and disposition of this property, as against the whole world, had such an interest in the faithful performance of the obligations of this bond, as more than met the requirements of this section. *White & Elder vs. Malcolm, et al.,* 15 *Md. Rep.,* 529 ; *Ing & Mills vs. State, use of Lewis & McCoy,* 8 *Md. Rep.,* 287.

There was no necessity for a reversal by the Circuit Court of its order, delivering this property to Everett, simply because the affirmance of the judgment by the Court of Appeals immediately operated to set aside said order. No order of the Court below was necessary to enable the receivers to institute and prosecute this action. The 102d section, Art. 1st, of the Code of Public Local Laws, enacts that "the receiver shall take charge of all the personal estate, goods, chattels, property and effects of every description whatever, other than real estate, of such individual, association or corporation, and collect and *make available the evidences of debt.*" This power is assuredly ample enough to have authorized the receivers in this case to sue upon this bond.

Another unanswerable and indisputable reason why this prayer should not have been granted, is found in the fact that the matters and things alleged in this prayer being each and all matters proper for a plea in abatement, and having been waived by the character of the defendants' pleading, they could not be availed of at that stage of the case by a prayer addressed to the Court. *Chapman, Adm'r, vs. Davis, Exc'x,* 4 *Gill,* 166.

The ninth prayer of the defendants was properly refused, because the fact that the receivers acted as the counsel of said Neff in the trespass case, is no evidence that they had any thing to do with the distress case. In the trespass case they acted as counsel of Neff, in the other they were acting as the officers of the Court, the two not at all inconsistent.

The tenth prayer of the defendants was properly refused, because the miners had nothing to do with that sale, they did not authorize it; Everett had no right to make such sale; a Court of competent jurisdiction had decided that the miners had an absolute lien on the property, and the Court of Appeals affirmed that decision. He filed a bond and sold the property in the face of that decision, and virtually said there is my bond, and now would say, though I sacrificed the property by selling it in *parcels separate* from the lease, take the money

and pay me my expenses; we say no, we want what we can show we could have obtained for that property if you had let it alone, and for the same reason the eleventh prayer was properly refused; we say the same to Mr. Neff. The amount for which you may have squandered the property, is no matter for us to assent to, we had an absolute right to the property and you had no business with it; if you placed the property where Neff could sell and sacrifice it, it is your fault, not ours, it is your loss, not ours.

MILLER, J., delivered the opinion of this Court.

After affirmance, in the case of *Everett, Adm'r of Tough, vs. Avery and others,* reported in 19 *Md. Rep.,* 136, of the order appointing the receivers, they brought the present action on Everett's appeal bond, to recover the value of the property in their possession at the time of the appeal, which had been disposed of pending the appeal. The condition of the bond is to transmit the record, prosecute the appeal with effect "and also indemnify and save harmless" Avery, Reid, Snyder and Montgomery the petitioning claimants, "and all other persons who may be entitled to the benefit of said decrees or orders, from all loss and injury which they or either of them may sustain by reason of said appeal, and also pay all costs and charges awarded by the said Court of Appeals." The declaration sets out the bond and assigns breaches somewhat informally, but yet with sufficient plainness, especially in the second count, to be protected from the demurrer by the 3d section of the 75th Article of the Code. The defendants pleaded ten pleas to which the plaintiff demurred, and the Court overruled the demurrer as to the *first, third* and *fourth,* on which issues were then joined, and sustained it as to all the others. The rulings in sustaining the demurrer to this extent, and in granting the plaintiff's two, and rejecting eight of the defendants' prayers, are now before us for review. Some of the material questions in this case are disposed of by the decision in *Blondheim vs. Moore,* 11 *Md. Rep.,* 365.

That was an appeal from an order granting an injunction and appointing a receiver, and there, as here, after appeal bond filed, an order was passed on the defendant's application, directing the receiver to deliver back to him the property. In deciding upon the effect of an appeal in such a case, under the Act of 1853, ch. 374, which is embodied in the Code, Art. 5, secs. 21 and 23, and of the affirmance of the order appealed from the Court say, "every thing is stayed, suspended until judgment shall be pronounced by the appellate tribunal, that is to say, the '*operation*' and '*effect*' of the injunction wholly and entirely ceases," and "if on an appeal from an order granting an injunction, this Court should *affirm* the order, and the *thing* on which the order was intended to operate should exist *in specie* in the possession of the defendant, then the injunction is *restored* to its *original vigor;* or if the thing is *consumed* or *disposed of*, then the complainant must proceed on the bond which is given for the express purpose of indemnifying him from *all loss* and *injury* which he may sustain because of the appeal." The same law regulates appeals from orders appointing receivers, and the same effect must be given to the appeal, and to the affirmance of the order by the appellate Court. This settles the question that the affirmance operates of itself a revocation of the order of the Court below, directing the receivers to deliver the property back to Everett, and re-affirms what was well settled before, that the measure of damages in the suit on the bond, where the property has been disposed of pending the appeal, is the value of that property at the time the appeal was taken. This disposes of the *tenth* plea and the *third* reason in the *eighth* prayer, which assert that the order directing the property to be delivered back to Everett, remained in force after the affirmance of the order appointing the receivers, and also of the *tenth* prayer relating to the value of the property as the basis of damages. The question of value and measure of damages was fairly and correctly put to the jury by the granting of the *sixth, seventh* and *eleventh* prayers, and the

plaintiff's *second* prayer. This latter prayer is not open to the criticism that it confines the jury to the appraisement made by Percy and Parker. It says if the jury find this was a fair valuation, "and that the same *was the value*" of the property, then the plaintiff was entitled to recover the amount of such valuation, thus leaving it to them to find the value from all the evidence in the cause. It is also objected to this second prayer of the plaintiff, that it assumes or fails to leave to the finding of the jury many facts essential to the plaintiff's right to recover. The only such facts are the appointment and bonding of the receivers, the orders appealed from and their affirmance, the possession of the property by the receivers at the time of the appeal, and the disposition of that property pending the appeal. All these were undisputed facts in the case, and most of them were proved by record evidence offered by the defendants themselves, and this objection is made for the first time in this Court. Prior to the Act of 1862, ch. 154, such a prayer would unquestionably have been so defective as to require a reversal of the judgment. But that law as construed in *Morrison & Kildow vs. Hammond's Lessee,* 27 *Md. Rep.*, 604, applies to this prayer, and prevents us from deeming it defective, no objection on this ground appearing to have been taken to it at the trial.

The *eighth* prayer denies the right of the receivers to bring this action, because they had no interest in the bond, and had not obtained the previous order of the Court to bring it. This bond, as we have seen, was placed in lieu of the property to which, as expressly decided in 19 *Md. Rep.*, 136, the receivers had the exclusive right of possession, and they were in actual possession of it at the time the appeal was taken. We are clearly of opinion they not only had the right, but that it was their duty to institute this action. They held their appointment not merely under the terms of the order appointing them, but under the provisions of a statute, (*Code Public Local Laws, Art.* 1, *secs.* 101, 102,) which made it their duty

to take charge of and sell this property, and collect the debts due to the deceased, and declared they should "be bound and held liable for every default, *negligence* or malfeasance in office." They would have been negligent in the discharge of their duty, if they had failed to bring this suit immediately upon the affirmance of the order appointing them, and no order of the Court directing them to do so was required. It is, therefore, wholly unnecessary to inquire whether in ordinary cases a receiver can bring an action without the previous order of the Court from which he derives his appointment. The *second* and *seventh* pleas, and the defendants' *first* prayer present, substantially, the same defence, viz: that the plaintiff cannot recover in this suit the value of the property distrained and sold by Neff under his distress warrant of the 8th of May. This defence cannot be sustained. If Neff had the right to make that distress and sale, he acquired it only by reason of the appeal and the giving of this bond. The receivers were appointed April 22d, and obtained possession of the property the next day. The appeal was taken and the bond filed April 30th, and the order restoring the property to Everett was passed May 5th. By the affirmance of the order the receivers were placed in the same position, in regard to their right of possession of the property, in which they stood at the time the appeal was taken. At that time it is very clear the landlord could not have distrained without the order or leave of the Court by whom the receivers were appointed. 7 *Paige*, 513, *Noe vs. Gibson*, and authorities cited in the preceding case of *Everett vs. Neff*. The bond being placed by law in lieu of the property, if that is disposed of pending the appeal even by legal process under superior title, but which could not have been executed except for the appeal, it is no answer to an action at law on the bond to say the property was taken and sold under such process. If, therefore, the distress had been legal, still the value of the property must be restored to the receivers, and disposed of by the Court in the case in which they were appointed, and

Everett and Dilley vs. The State, use of McKaig and Perry.

Everett must seek his remedy against the fund there. We have, however, decided in the preceding case that this distress was illegal. The plaintiffs' *first* prayer was properly granted, and the defendants' *second, third, fourth, fifth* and *ninth* properly rejected. There is no evidence that the receivers procured or induced Neff to make the distress of the 8th of May, or that they knew of, or acquiesced in it. The fact that the receivers acted as counsel for Neff in the trespass suit, and consented to the agreement in relation to the abandonment of the distress of the 17th of April, is no evidence from which the jury would be authorized to infer that they procured or induced the issue of that of the 8th of May. The *fifth* plea, if regarded as a denial of the receivers' right to sue, has already been disposed of. As a plea of *non damnificatus* it is bad, and in so holding we need not decide whether such a plea is, under any state of pleadings, applicable to an action on an appeal bond. In this case the declaration assigns the breaches, and the only theory and purpose of the plea of *non damnificatus* is to compel such an assignment, and the only *answer* that can be made to it is a replication setting forth how the party has been damnified. 1 *Chitty's Pl.*, 585; *Evan's Pr.*, 198; *Richards vs. Hodges*, 2 *Saund. Rep.*, 83; *Hulland vs. Malken, et al.*, 2 *Wils*, 126; *Cox vs. Joseph*, 5 *Term Rep.*, 309. The same objection applies to the *sixth* plea, and besides it is no answer to the suit of these plaintiffs to say that other parties have not been damnified. The *eighth* plea is bad, if for no other reason, because whilst professing and assuming to answer the whole declaration, it answers only a part. 1 *Chitty's Pl.*, 523, 524; *Mitchell vs. Sellman*, 5 *Md. Rep.*, 384. The *ninth* plea negatives an entirely immaterial averment of the declaration. The receivers had no interest in the costs recovered in the Court of Appeals, and no right to sue for them, and the allegation of non-payment of these costs in this declaration, was mere surplussage upon which no issue could properly have been joined.

*Judgment affirmed.*

(Decided 12th February, 1868.)