# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

### FULTON *v.* FLETCHER.

APPEALS; APPEAL BONDS; CREDITORS' BILLS; PLEADING AND PRACTICE; TRIAL; PRINCIPAL AND SURETY; LIENS; APPELLATE PRACTICE.

1. In a suit upon an appeal bond, a collateral attack upon the jurisdiction of the appellate court upon the ground that the appeal was from an interlocutory order and not a final decree, can not be sustained, where that court has discretionary power to entertain appeals from interlocutory orders, and it assumed jurisdiction in the order appealed from, and nothing in the record shows a want of jurisdiction.

2. Where the condition of an appeal bond is that the appellants "shall prosecute their said appeal to effect and answer all damages and costs if they shall fail to make good their plea," an assignment of a breach in the declaration in a suit on the bond is sufficient, which, after stating the facts showing the execution of the bond, the confirmation of the decree, etc., is that the appellants "did not prosecute their appeal to effect, and they have failed to make good their plea, whereby the condition of the said writing obligatory was broken."

3. If, in such a case, such averment of the breach of the condition is defective, but the defendant instead of demurring pleads over, the defect is cured by verdict.

4. Where in a creditors' suit to annul certain alleged fraudulent deeds, after an appeal from an interlocutory order, a receiver is appointed, who sells such of the property in controversy as can be found, and a reference is had to the auditor whose report distributing the proceeds of sale is ratified by a decree of court, such decree has the effect of vacating and annulling the alleged fraudulent deeds, and is such a final decree as will authorize a suit upon an appeal bond given by the defendant.

12 Ct. App.—2

2 FULTON *v.* FLETCHER

5. Where an appeal in a given case operates to delay the appointment of a receiver of the property in controversy, and during the delay the property depreciates in value, such damage, if found to be the natural and proximate result of the appeal, is recoverable from the surety on the appeal bond; and the liability of the surety continues for such time after the return of the mandate from the appellate court as is reasonably occupied in a diligent attempt to secure the appointment of the receiver and seizure of the property.

6. In an action on the appeal bond in such a case, the trial court may properly state to the jury what is not an unusual delay on the part of the plaintiff in securing the appointment of a receiver after the return of the mandate, leaving to them the determination of such matters of fact only as in the pursuit of the remedy could be distinctly separated therefrom.

7. The complainant in a creditors' suit to vacate alleged fraudulent deeds acquires a lien upon the property by the filing of his bill, which upon a final decree in his favor becomes conclusively fixed.

8. This court will not consider exceptions taken to portions of the trial court's charge to the jury which are marked off by means of brackets, when the specific ground of objection is not stated, and the exceptions do not present distinct and controlling questions of law.

No. 713. Submitted October 21, 1897. Decided December 14, 1897.

HEARING on an appeal by the defendant surety from a judgment on verdict, in an action on an appeal bond. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action to recover damages upon an appeal bond given in the appeal case of *La Tourette* v. *Fletcher,* 6 App. D. C. 324.

That was a suit in equity begun originally by Fletcher, a judgment creditor of La Tourette, against the latter, and one Celestia A. Smith, and Thos. M. Fields, trustee, to vacate for fraud upon creditors, a trust deed given by said La Tourette to said Fields, as trustee, to secure certain indebtedness to said Smith. Whilst said cause was depending, said Fletcher, acting by other counsel, filed a supplemental bill setting up another judgment against La Tourette for a

larger sum than before. One Louise Apgar also intervened by petition, as a judgment creditor in a small sum.

By paying the judgment set out in the original bill, La Tourette, without the knowledge of the counsel in the other demands, procured an order to the clerk from the solicitor who had filed the bill, which was obeyed, to discontinue the suit. Before the dismissal, and in violation of a restraining order, La Tourette gave a second trust deed upon the same property, consisting of horses, carriages, and livery stable equipments, to said Fields, as trustee, to secure one Rapin E. Davis, in the sum of $1,000.

On the same day that the aforesaid discontinuance was entered, namely, July 16, 1894, releases of the aforesaid trusts were filed for record, and therewith a conveyance by La Tourette to said Davis of the same property for a recited consideration of $6,000, accompanied by a trust deed by Davis to Fields, trustee, to secure La Tourette in the payment of two notes for $2,000 each.

July 21, 1894, Fletcher entered a motion to vacate the order of discontinuance of the case and for leave to proceed upon his supplemental bill aforesaid. This motion was granted on October 30, 1894. La Tourette appealed to this court and gave the bond in controversy November 22, 1894, for the sum of $1,200, signed by himself and Fields, appellants, and the defendant, Horace K. Fulton, as surety. The decree was affirmed by this court May 13, 1895, and mandate issued thereon June 1, 1895.

It appears, further, that before the discontinuance mentioned, namely, on March 8, 1894, an order had been made by one of the justices holding the equity special term restraining La Tourette *et als.* from further disposition of the property. A rule to show cause why a receiver of the property should not be appointed was also granted. By means of promises and negotiations looking towards the payment of the judgments, the application for the appointment was not pressed, and on July 9, 1894, the same was overruled

for these reasons, but without prejudice. After the return
of the case Fletcher filed an amended supplemental bill,
setting out all the facts aforesaid, alleging fraud in the said
sale to Rapin E. Davis, who was made a party thereto, and
praying that the same be vacated, that a receiver be ap-
pointed, and so forth. A rule to show cause was obtained
and La Tourette, Fields, and Davis filed answers thereto.
January 8, 1896, the order was granted and David L. Coon
appointed receiver and directed to take charge of the prop-
erty that could be found. Rapin E. Davis entered an
appeal from this order, which was afterwards (September
11, 1896) by him dismissed.

A receiver's report was made on the same day showing
the finding and entry into possession by him of a small
amount of the property, and that he had failed to find the
bulk of the same. A sale was ordered of the property
found, and it was sold for $500. The sale was approved
and the matter referred to the auditor to state the account
and the distribution of the funds. The report of the auditor
was confirmed on September 30, 1896, and the distribution
ordered as recommended. The net sum of $164.30 was or-
dered paid to Fletcher and credited on his judgment, the
remainder of which then, with interest, amounted to more
than the penalty of the bond. It appears also that the surety,
Horace K. Fulton, filed a petition in that proceeding in
February, 1896, setting out the terms of the bond, and that
it had been discharged, and praying to be released from
further liability thereon. This was refused March 23, 1896.

The appeal bond, in the sum of $1,200 was conditioned,
as required by the rules of court, that La Tourette and
Fields "shall prosecute their appeal to effect and answer all
damages and costs if they shall fail to make good their plea."
The counsel for defendant Fulton objected to the introduc-
tion of the bond and all the proceedings in equity above
recited, including the mandate of the Court of Appeals, upon
grounds that will be stated hereafter.

Evidence was introduced tending to show that the property delivered to Davis in the sale above mentioned was worth, on July 16, 1894, (the date of the discontinuance of the suit), $2,100; on October 30, 1894, (the date of vacation of the order of discontinuance), $2,000; on November 20 (the date of the appeal bond), about $1,500; on June 1, 1895 (the date when the mandate was sent down), from $1,200 to $1,700, and before and on September 11, 1896, (when the receiver took possession), about $500. It was also proved that there had been loss and deterioration of the property between November, 1894, and June, 1895, and afterwards, generally.

The court charged the jury substantially (1) that the plaintiff had a lien on the property when the appeal bond was given; (2) that the question to be determined was whether, but for the giving of that bond, the plaintiff would have made more money out of the property than he did; (3) that if the appeal bond had not been given the plaintiff would have been entitled to a receiver in that cause at the time or as soon thereafter as the court could have acted upon a motion therefor, which might have taken a few days or several months to accomplish; (4) that they must determine from the evidence what the property was actually worth at the time that a receiver would probably have been appointed but for the appeal; (5) that then, if worth more than plaintiff's debt, he would have made it all; if less, he would have what the property was worth, less the expenses of the equity suit; (6) that then the next question would be, whether, after the case came back from the Court of Appeals June 1, 1895, the plaintiff might, by due diligence, have made the whole of his debt or more than he did realize? If he could have done so by due diligence, then the bond, though it suspended proceedings for a time, did not damage the plaintiff; (7) that if he could not have made his whole debt, but only a part after the case came back from the Court of Appeals, by the use of due diligence, then his recovery

would be reduced by so much as he might have realized had he been diligent; (8) that the question of prompt and diligent action, to such an extent as was reasonable to expect, plays some part in the determination of the case; (9) that they were to presume that plaintiff met with opposition all the way along, because there was opposition at the time the receiver was appointed (as we have seen, there was an appeal therefrom to the Court of Appeals that was not disposed of until September, 1896; but this was properly not taken into account); (10) that a period of more than six months elapsed from the time the case came back—June 1, 1895, until January 8, 1896—when the receiver was appointed. In this connection it was said:

"I have had some doubt whether that was question of law for me or a question of fact for you, as to whether that was due diligence on the part of the plaintiff, but I have concluded on the whole to say to you that it is not unusual in cases of that kind for the application for a receiver to be delayed as long as that was, and leave it to you, after I tell you that it is not unusual, for you to determine whether the plaintiff did obtain a receiver there as soon as he should have done so.

"If you find that he did not use reasonable diligence, and should and would have obtained a receiver earlier if he had been more diligent about it, you would determine about what time you think reasonable diligence would have obtained a receiver in the case; whether it would have been July or August or September or October—when it would have been; and when you have determined that, and if the evidence satisfies you that he should have obtained a receiver by due diligence earlier than he did, then you will take that date as the one from which you would make your calculation; that is to say, you would then inquire what the value of the property was on that date that he would have obtained a receiver by the use of due diligence.

"If you find that he did use due diligence, and that he

obtained a receiver as early as could reasonably be expected, then, instead of selecting some date between the 1st of June, 1895, and the 11th of January, 1896, as the date that you think that he should have obtained a receiver, you will take the date of the 8th of January, 1896, the date when he actually did obtain the receiver, and inquire what the property was worth on that day; that is, the 8th of January, 1896.

" If you take the 8th of January, 1896, or some earlier date, you would inquire then what the value of the property was or the value of what was left of the property at the time the receiver was actually appointed or the time he would have been appointed by the use of due diligence, and then you will take the difference between what the plaintiff would have realized upon the property if no appeal had been taken and he had been allowed to go right on in the fall of 1894 and what he did realize or would have realized by the use of due diligence.

" You take the difference between those values, and that is the amount the plaintiff is entitled to recover."

(11) After giving illustrations of the mode of estimating the damages under the situations as stated, and directing the jury to bear in mind the grounds upon which they might find for the defendant, they were told: "You are to find what he would have made if the bond had not been given; and then find what he would have made if the receiver had taken possession on January 8, 1896, or at any other time, if by due diligence it could have been put in the receiver's hands earlier than that, and take the difference between the two, and that is the amount of your verdict, if you find for the plaintiff."

There was some other directions to the jury, but the foregoing comprise all that have been seriously objected to under the exceptions taken. The jury found for the plaintiff for the full amount of the penalty of the bond, and judgment was entered thereon after motions in arrest of judgment and for new trial had been overruled.

*Mr. D. W. Baker* and *Mr. Alexander Wolf* for the appellant:

1. Considering the declaration as one filed for a breach of the first part of the condition, that is, that the said La Tourette and Fields shall prosecute their appeal to effect, and that they did not prosecute their appeal to effect, but have failed to make good their plea, whereby the condition of the said writing obligatory was broken, this allegation is insufficient, as it fails to show any judgment in the court above for costs, and said judgment can not be presumed. Unless the breaches be properly assigned, the plaintiff is not entitled to recover, and any verdict founded on improper breaches, or where no breaches at all have been assigned, is absolutely null and void, and the court will arrest the judgment. Not only must the declaration set out the penal amount of the bond, but it must set out sufficient data to regulate the assessment of damages in order that the jury may have something to go upon, and in order that the defendant may be apprised of what damages the plaintiff intends to claim. *People* v. *Russell,* 4 Wend. 570; *Albany Church* v. *Nedder,* 14 Wend. 165; *Dale* v. *Dean,* 16 Conn. 579. The mere allegation in the declaration that the plaintiff did not prosecute his appeal with effect, is insufficient to apprise the defendant of what damages the plaintiff is going to claim.

The words " by reason of the failure to prosecute," etc., show that the damages alleged by the plaintiff to have been sustained were merely by reason of the premises that preceded the allegation and nowhere in the declaration does it appear affirmatively or impliedly that there ever was a decree in the equity cause in favor of the plaintiff. This was an absolutely essential averment in order to entitle the plaintiff to recover damages in this cause.

This allegation of the final determination of the suit being one of the essential facts in order that the plaintiff might recover, can never be presumed, the general rule of law

being that where a declaration inartificially states a cause of action, the same is cured by verdict and the court will not arrest the judgment, but where a declaration states no cause of action, or leaves out one of the essential ingredients of a cause of action, then the defect will not be cured by verdict. *Slacum* v. *Pomery*, 6 Cr. 221; *Pollard* v. *Lyon*, 91 U. S. 225; *Garland* v. *Davis*, 14 How. 144; *Eberhart* v. *Ruster*, 96 Ind. 478; Gould on Pleading, 462; *Baltimore City* v. *Sewell*, 35 Md. 250; *McDonald* v. *Hobson*, 7 How. 745; *Hart* v. *Harrison Wire Co. et al.*, 91 Mo. 414; *Turner* v. *Walker*, 3 G. & J. 389. See also *Mansfield* v. *Winter*, 10 App. D. C. 349; *Railroad Co.* v. *Hickey*, 5 App. D. C. 407; *Township of Lincoln* v. *Iron Works*, 103 U. S. 412.

2. The objection taken to the introduction of the evidence of the equity cause by the plaintiff is grounded not only upon the fact that there is no allegation in the declaration to sustain such evidence, but upon the fact that in said equity cause there appears no final decree. We are not here claiming that the auditor's report and its confirmation are not *res judicata* of the fund itself, but what we do claim is that it did not convey any right except in the fund itself, and that we have a right to compel a final determination of the equity cause before any other damages can be assessed against us. *Taylor* v. *State*, 73 Md. 220. This decree, then, being a decree *in rem*, only bound the fund involved and had no effect whatever upon the rights of the parties. The rule of *res judicata* does not apply to points which could only collaterally command consideration, or are only incidentally considered, or can only be argumentatively inferred from the decree. *Hopkins* v. *Lee*, 6 Wheat. 109.

3. In regard to the admission of the mandate of the Court of Appeals, this court has itself determined that in a case like the equity cause referred to in the bill of exceptions, it has no jurisdiction to hear an appeal upon an interlocutory order by original appeal. *Hurst* v. *Saunders*, 5 App. D. C. 66. That being so, the mandate should not have been ad-

mitted in evidence, as the judgment of a court acting without jurisdiction is null and void. *Elliott* v. *Peirsol*, 1 Pet. 328.

4. The court in substance instructed the jury that they had a right to assess damages against the appellant for acts committed by third persons after the affirmance of the decree in the Court of Appeals and the filing of the mandate in the court below. This was error. It is a well settled principle of law that the liability of the surety is not to be extended beyond the contract itself. *Miller* v. *Stewart*, 9 Wheaton, 680; *Mix* v. *Singleton*, 86 Ill. 194. The condition of the bond is—" shall prosecute their said appeal to effect and answer all damages and costs if they shall fail to make good their plea." All damages mean damages accruing pending the appeal and not damages and injury occurring afterwards. The effect of the appeal in this case was to delay the appointment of a receiver pending the appeal, and in no way could the appeal affect the right of the parties after the return of the mandate. Construing the contract in the broadest way, the sureties could not be made liable for a failure to appoint a receiver after the return of the mandate. *Caball* v. *Citizens' Asso.*, 74 Ala. 541.

The appellee in this case is entitled to such damages as arose by the natural consequence of a suspension of his application for a receiver, and that suspension ceased as soon as the mandate was filed in the court below. If the liability can be continued a day or a month after the return of the mandate, what is to prevent it from continuing up to the time action is brought on the bond? They are liable in damages for the actual injury suffered by the appellees from the delay; and this is the only legitimate ground on which to estimate damages. *Wood* v. *Fulton*, 2 H. & G. 60; *Kountz* v. *Omaha Hotel*, 107 U. S. 378.

*Mr. R. B. Lewis, Mr. Benj. S. Minor* and *Mr. Edwin Forrest* for the appellee:

1. The breach of the condition of said bond is properly

assigned. It is sufficient to negative the covenant where such general assignment necessarily amounts to a breach. *Smith* v. *Jansen,* 8 Johns. 114; *Hughes* v. *Smith,* 5 Johns. 174; 1 Chitty Pl. 332 and 333 ; *Karthaus* v. *Owings,* 2 G. & J. 441. *Gorman* v. *Lenox,* 15 Peters, 116. An assignment of a breach in the case at bar could not well have been made otherwise than in the language of the condition of the bond, and such an assignment necessarily amounts to a breach.

2. Whatever may be the objections to the declaration, it can not be said that the plaintiff had a defective or insufficient cause of action, but the most that can be said is that there was a defective statement of a good cause of action, and this was cured by the verdict. Whatever imperfections there may have been in the declaration as to alleging a final decree in favor of plaintiff, they were, as well as the other imperfections and defects urged by appellant, cured by the verdict. *Thomas* v. *Roosa,* 7 Johns. 462; *Weigley* v. *Weir,* 7 S. & R. 309 ; *Harrell* v. *McAlexander,* 3 Rand, 101 ; *Palmer* v. *Arthur,* 131 U. S. 60.

3. The order ratifying and confirming the auditor's report is in effect a final determination of the equity cause in favor of the appellee. *Taylor* v. *State,* 73 Md. 220; *Butler* v. *State,* 5 G. & J. 511. In any event, said decree confirming the auditor's report can not be collaterally attacked. *Cooke's Lessee* v. *Carroll,* 6 Md. 111; *Rahang's Admx.* v· *Hammond,* 2 H. & G. 42 ; *Wilson* v. *Ireland,* 4 Md. 444.

4. There was no error by the court in admitting the mandate of this court in evidence. The contention that said order was an interlocutory order, and not appealable, was raised in *La Tourette* v. *Fletcher,* 6 App. D. C. 324, but the court, by taking jurisdiction and deciding the case, impliedly decided said order not to be an interlocutory order. *Clary* v. *Hoagland,* 6 Cal. 688; *State* v. *Bank,* 20 Wis. 640 ; *Thornton* v. *Baker,* 15 R. I. 553. Even though the Court of Appeals had no jurisdiction to try said appeal, yet the appellant is estopped from denying its jurisdiction after giving

bond and obtaining delay. *Love* v. *Baker*, 1 Wis. 336; *Clark* v. *Miles*, 2 Pinney, 432; *Stephens* v. *Miller*, 80 Ky. 49; 1 Enc. of Pl. and Practice, 1019, note 2, and cases there cited.

5. The bond is conditioned to answer all damages and costs, meaning such as result from and are a legal consequence of the appeal, and is not conditioned to answer intervening costs and damages, as is contended by the appellant. The damage suffered is the difference between the value of the property on the day when bond was given and appeal perfected, and the day when appellee, by due diligence, obtained possession thereof by the appointment of a receiver. The damage from the date of return of the mandate to the court below was the natural, proximate and actual result of the prosecution of the appeal and the delay caused thereby, and are recoverable under the bond. *Roberts* v. *White*, 73 N. Y. 375; *Lange* v. *Wagner*, 52 Md. 310. Such damages do not extend or enlarge the liability of the surety under the terms of the contract.

Mr. Justice SHEPARD delivered the opinion of the Court:

Error has been assigned upon sixteen grounds relating to exceptions to the evidence and the charge, as well as to points made in the motion in arrest of judgment; but these have been condensed by counsel into certain points of contention that will be considered in their proper order.

1. The first of these is that the bond was void for the reason that the Court of Appeals had no jurisdiction of the appeal in the case of *La Tourette* v. *Fletcher*, 6 App. D. C. 324, because that appeal was not from a final decree, but from an interlocutory order only, without the allowance of said court upon petition duly made therefor under the statute, defining its jurisdiction. Act February 9, 1893, Sec. 7, 27 Stat. 435.

If it be conceded that the appeal was from an interlocutory order, from which an appeal does not lie as a matter of right under the statute, but only within the

discretion of the court, exercised upon a petition therefor, it still does not follow that the ground of objection is tenable. It appears by inference only, from the facts of the proceedings in that cause offered in evidence by the plaintiffs (and received over the objections of the defendant), that the appeal therein may have been taken outright and without leave granted.

Now, if it were the fact that the Court of Appeals could under no conditions whatever have taken jurisdiction of the case, the point could be made in a collateral attack upon its decree of confirmation and upon the validity of all the proceedings on that appeal.

But as that court could exercise appellate jurisdiction in its discretion over all interlocutory decrees and orders, and did assume jurisdiction in that case and determine it, it should be presumed upon a collateral attack, and especially in the absence of anything in the record itself necessarily showing the contrary, that the necessary conditions did exist to confer jurisdiction. *Dowell* v. *Applegate,* 152 U. S. 327, 337, and cases cited.

2. The next proposition grows out of the assignments of error founded on exceptions taken to the admission in evidence of the bond and other proceedings in the equity cause and to the denial of the motion in arrest. It is that the assignment of the breach of the bond in the declaration is so defective that it is incapable of being cured even by the verdict. The condition of the bond was, as we have seen, that the appellants " shall prosecute their said appeal to effect and answer all damages and costs if they shall fail to make good their plea." The assignment of the breach in the declaration, after stating the facts showing the execution of the bond, the confirmation of the decree, and so forth, is that the appellants " did not prosecute their appeal to effect, and they have failed to make good their plea whereby the condition of the said writing obligatory was broken." There was no demurrer to the declaration, and defendant entered

the ordinary pleas. In the case of a similar assignment of the breach of a replevin bond it was said by the Supreme Court of the United States: "The breaches are not assigned with care, and the judgment recovered in the replevin suit is inartificially stated in the declaration; but it seems where the declaration is on a bond given to prosecute with effect a writ of replevin a breach assigned as in this declaration, 'that the suit was not prosecuted with effect,' is sufficient." *Gorman* v. *Lenox*, 15 Pet. 115, 117.

That was on a writ of error to the Circuit Court of the District of Columbia, and the question arose on demurrer and not, as in this case, on objections to evidence and on a motion in arrest of judgment. That case, however, is sought to be distinguished from this because from the peculiar nature of the action of replevin and the bond therein damages necessarily follow from the breach. In support of its ruling the court cited a case on an appeal bond, where it was said that "in assigning breaches the general rule is that they may be assigned by negativing the words of the covenant." *Karthaus* v. *Owings*, 2 G. & J. 430, 441.

The same doctrine has been announced in the case of "gaol-delivery" bonds—*Smith* v. *Jansen*, 8 Johns. 111, 114; *Hughes* v. *Smith*, 5 *Id.* 168, 174—and also in actions on bonds for injunction. *Burgess* v. *Lloyd*, 7 Md. 178, 195; *La Strange* v. *Roche*, 58 Md. 26, 40.

The question of correct pleading in such cases, however, is not necessarily raised on this record. Here there was no demurrer on which opportunity to amend would have offered, but pleas denying liability, alleging performance, and the like; and if it be admitted that there was a defect that would have been fatal on demurrer, it is one that was clearly cured by the verdict. *W. & G. R. Co.* v. *Hickey*, 5 App. D. C. 436, 467, and cases therein cited. See also *Weigley's Admr.* v. *Weir*, 7 Serg. & R. 309, 310; *Thomas* v. *Roosa*, 7 Johns. 460; *Harrell* v. *McAlexander*, 3 Rand, 94, 101; *Brauns* v. *Glesege*, 130 Ind. 167, 169.

3. The next objection in order, namely, that the decree in *Fletcher* v. *La Tourette and others*, ratifying the auditor's report and ordering the payment of the net proceeds of the sale of the property to Fletcher, was not such a final decree or disposition of the cause as would authorize a suit upon the bond, is not well taken. The parties were all before the court. It is true that, by apparent neglect, there was no formal decree entered vacating and annulling, as prayed, the conveyances under which La Tourette had covered up the property, which was all personalty; but the order ratifying the report and directing the payment of the proceeds of the sale to Fletcher necessarily had that effect. When we look from its form to its substance we see that from no other point of view could it have been made. It was such a final decree or order as La Tourette and Davis could have appealed from without leave from this court. *Gilbert* v. *Wash. Ben. Endowment Assn.*, 10 App.D.C.316; *Taylor* v. *State*, 73 Md. 220. All of the property conveyed by La Tourette that could be found by the receiver was sold by order of court. There is nothing in the record to show that any more of it was then in reach of the process of the court or even in existence. On the other hand, every inference is to the contrary. If in fact there was more of the property that might have been seized, the circumstances in evidence were such as to shift to the defendant the burden of proving it in mitigation of damages.

4. The last as well as the most difficult question in the case is on the exceptions taken to the charge of the court and upon the refusal of certain prayers for instruction embodying the contention of the defendant in respect of the measure of damages for the breach of the bond.

The substance of the charge has been given in the preliminary statement. Defendant's refused prayers were that under the evidence nominal damages only could be recovered; that the damages, if any, sustained are limited between the time of giving the bond and the date of filing

the mandate of the Court of Appeals, and, further, that "the plaintiff is not entitled to damages by reason of the delay in adjudicating the equity cause, whether such delay was occasioned by the complainant or the defendants in said cause."

The difficulty lies in the peculiar character of the proceedings in the cause and of the decree that was appealed from and suspended by the approval of the bond. Had it been a final decree for the payment of money, the foreclosure of a mortgage, or for the possession of personal property, and the whole or a part had been lost by waste, the liability would be easily determined. *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378, 386, 388, 392; *Jenkins* v. *Hay*, 28 Md. 547; *Cook* v. *Marsh*, 44 Ill. 178, 180; *Everett* v. *State, use of McKaig*, 28 Md. 190.

In the view taken of the bond in this case as disclosed by the appellant's prayers for instruction, it would be difficult to conceive a case, other than those enumerated above, where the damages would be more than nominal; and yet the record presents a case where a certain, distinct and serious injury has accrued to the appellee through an appeal secured on the bond executed by the appellant. He was kept from his execution on the property by that appeal; at least, until it was decided; and by the action of the principals in the bond (the appellants in said cause), in advantage taken of the law's delay, he has sustained damage. This delay was found not to have resulted from any want of diligence on the part of the appellee. The bond brought about the suspension of all proceedings and made good the possession of the property by the principals and the parties colluding with them, who were thus enabled to make way with the most of it and destroy its value.

Upon whom should this loss fall? Upon the plaintiff, who has been retarded in the pursuit of an adjudged right, or upon the signer of the bond by virtue of which he has been baffled in that pursuit?

The very wide range and varying character of actions, suits, judgments, and decrees necessitated broad generalization in the stipulated conditions of a form of bond intended to operate in all. The very nature and uses of such bonds and their general recitals, in necessary conformity to the terms of statutes or rules of court, render it unreasonable and unjust to give the liability of sureties therein the strictness of interpretation that sometimes applies in the case of guarantors or special sureties in voluntary contracts between two parties. The interpretation, on the contrary, should rather be liberal, for the necessary protection of those who have nothing to do with the form or approval of the obligation, and are compelled, against their wills, to forego their legal claims and incur risk of loss by reason thereof. This view, we think, is sound in principle and supported by authority in analogous cases. *McElroy* v. *Mumford,* 128 N. Y. 307; *Barton* v. *Fisk,* 30 N. Y. 166, 172; *Ives* v. *Merchants' Bank,* 12 How. 159; *Sessions* v. *Pintard,* 18 How. 106.

In a recent case in this court, a suit upon an official bond, the argument was made that the contract should be strictly construed, and that the liability should not be extended by implication.

Replying thereto, in the opinion it was said:

" That, as a general principle, is certainly true, but it is equally true that sureties are as much bound by the true intent and meaning of the contract subscribed by them as the principal himself, and the general rule of construction is to hold the surety bound to the same extent that the principal is bound under the same contract. *Benjamin* v. *Hillard,* 23 How. 149; *Read* v. *Bowman,* 2 Wall. 591." *United States* v. *Maloney,* 4 App. D. C. 505, 511.

In one of the cases relied on by the appellant, where the condition of the bond was the payment " of all costs and such damages as the plaintiff may sustain by reason of the appeal," it was said: " The fair and just construction of the words of the condition of the bond is that the obligors bound

12 Ct. App.—3

themselves in the event of the affirmance of the judgment
to pay and satisfy the costs of the appeal and all such damages
as were the natural, proximate consequence of the appeal,
and its legal incident, the suspension of judgment." *Caball*
v. *Citizens' Assn.*, 74 Ala. 541. The charge of the court, as
we apprehend it, presented the case in this light to the jury,
namely, that the damages to be recovered were such as nat-
urally and proximately resulted from the delay of plaintiff's
right by reason of the appeal without being in any degree
contributed to by the want of due diligence on the part of
the plaintiff himself.

In *Keen* v. *Whittington*, 40 Md. 489, 497, 498, the action
was on an appeal bond conditioned that the appeal should
be prosecuted with effect, and that the appellants should
"satisfy and pay the judgment appealed from in case that
judgment should be affirmed." The appeal was not prose-
cuted with effect, but was dismissed by the appellant. It
was said that in case of affirmance the measure of damages
was fixed by the amount of the judgment; but as it was not
in fact affirmed, "the extent of recovery would depend upon
the loss and injury sustained by reason of the stay of exe-
cution on the judgment appealed from."

As we have before intimated, it is difficult to see, even
from the meager statement of the evidence in the record,
how damage could have failed to result in some material
degree. The remoteness of damage is not to be tested by
the mere difficulty in arriving at the actual result with
certainty.

From what appears in the bill of exceptions, which does
not state that it sets out all of the evidence in the case, there
was a rapid depreciation in the value, by deterioration and
other causes perhaps, of the property during the time from
the sale to the reinstatement of the case, the appeal, the
time of affirmance, and the appointment of the receiver.
The question was narrowed down to this: Did the plaintiff
have a reasonable chance to realize all or a part of his judg--

ment at the time the appeal bond was approved; and, if so, what was the natural and reasonably certain result of that appeal?

As was said by Redfield, J., in *McGregor* v. *Balch*, 17 Vt. 562, 568: "Intervening damages are such as will make the party as well off as if no appeal had been taken." In that case the question arose on the offer of proof to show that some time after the appeal the appellant came into property subject to execution more than enough to discharge the judgment, and that the same had disappeared before the judgment was affirmed. It was held that the evidence was admissible and the charge correct which submitted to the jury, as the measure of damage, the "chance" that the plaintiff may have had to make his debt out of that property had there been no impediment to the issue of execution and its diligent use.

It surely can not be a sound proposition of law that the liability of a surety on an appeal bond must be determined in all cases by the situation at the very time of the diligent return of the mandate of the appellate court and not one moment thereafter. If such were the rule, then the appellant, who may have had personal property ample to satisfy the entire judgment and costs on that day, might put it out of reach before an execution could be issued and levied with ordinary diligence or before a receiver, if an order of appointment had been made and then suspended by the appeal, could seize thereon. Would it be said in such event that the damages necessarily sustained thereby were not included in the condition of the bond, because it carried no liability or risk after the return of the mandate in due course? We think not. If, then, the liability does not terminate instantaneously with the mandate's return, it must continue for some space of time reasonable under all the surrounding circumstances; and that reasonable time within which the loss of chances of satisfaction would continue to be indemnified would extend no further than such

time as the party could, by the use of proper diligence, avail himself of his right. Such must in all fairness be the obligation that the surety assumes when he executes a bond in a case like this.

The appeal was parcel of the scheme of delay practiced in that cause. The property was depreciating in value and being disposed of during the pendency of litigation. The appointment of a receiver had been prevented by negotiations and promises which resulted finally in the fraudulent procurement of the discontinuance of the suit. When that order was sought to be vacated it was opposed, and when granted was appealed from. When application was made for a receiver, that was also opposed and delayed. The surety, aware of the situation and apprehending his probable liability, came into the cause and petitioned to be discharged from all further obligation. If there had been no appeal and a receiver had been appointed, after opposition and postponement for the same period of time as afterwards occurred, there would still have been property remaining, and capable of seizure and sale, more than enough to satisfy the plaintiff's demand. The second application for and the appointment of a receiver were delayed by so much additional time as all proceedings were suspended by the appeal.

The delay thus secured by the appeal, with the time necessarily occupied after affirmance in a diligent attempt to secure a receiver and seizure of the property, enabled time and the acts of the parties to practically destroy the value of the property.

If the evidence showed, and the jury found that it did show, the damage to have been the natural and proximate result of the appeal, it must be regarded as within the contemplation of the surety when he executed the bond and co-operated in the plan of delay.

In any other view, the parties who have been found to have committed fraud, and who have been decided against

at every turn of the case, will, nevertheless, have accomplished in the main their fraudulent purpose to protect the property from seizure and sale in satisfaction of plaintiff's judgment. To permit this would be a reproach to the law. The appellant, who is chargeable with knowledge of all that the record contained, voluntarily assumed the chances of the liability that has been fixed upon him.

As was said in a case in the Supreme Court of the United States not unlike this in one of its features: "The condition of the appeal bond was for the prosecution of said appeal to effect, and to answer all damages and costs if there should be a failure to make the plea good in the Supreme Court. There was a failure to do this, and the penalty of the bond was incurred. Whatever hardship may be in this case is common to all sureties who incur responsibility and have money to pay. Beyond that of a faithful application of the proceeds of the land (the subject of foreclosure), in payment of the decree, the appellants have no equity." *Sessions* v. *Pintard*, 18 How. 106, 109.

5. Some other questions arise on the general exceptions to the charge of the court which will be briefly considered.

(1) The court did not err in charging the jury that the plaintiff acquired a lien upon the property described in the bill. It was an equitable interest that could not be reached by execution and the filing of the bill was the commencement of the lien. *Freedman's Savings and Trust Co.* v. *Earle*, 110 U. S. 710; *Gottschalk Co.* v. *Distillery Co.*, 7 App. D. C. 169, 173. The decree of sale and distribution being, as we have before said, final in effect, the lien was thereby fixed conclusively.

(2) In respect of that part of the charge submitting the question of Fletcher's due diligence to the jury, the complaint is that it was not submitted wholly to the jury without suggestion from the court as to what was not unusual delay in cases where a receiver may be applied for in a case of this kind. Assuming that the question of diligence was

for the jury exclusively as one of fact only, we can find no reversible error in this expression of the court. The matter was in fact left to the jury and not taken from them by the court. As we had occasion to say in a former decision, "A trial judge ought certainly to be careful to avoid any remarks which might tend to convey an impression to the jury that he has an opinion with respect to the truth of any disputed fact that has been submitted to them for decision ; but if this be done, it does not necessarily follow that a new trial must be granted." *Washington Gas Light Co.* v. *Poore*, 3 App. D. C. 39. The rule laid down in repeated decisions of the Supreme Court of the United States goes much further than would be required to sustain the expressions of the court in this case. *Railroad Co.* v. *Putnam*, 118 U. S. 545, 547; *Simmons* v. *United States*, 142 U. S. 148, 151, 155; *Lincoln* v. *Power*, 151 U. S. 436, 442. As a matter of fact, the chief reliance of the defence was in the questions of law that have been considered above, and but little stress was laid upon the minor questions relating to the mode of arriving at the damages in the event that they might be allowed for anything occurring after the mandate was returned.

In our opinion, a much more serious objection to this charge would be that the court left too much to the jury in regard to the question of diligence.

Involving as it did the steps necessary, in accordance with the practice in equity, to procure the appointment of a receiver, the seizure, and the sale of property in satisfaction of the debt, the court should have been more specific in informing the jury in respect of these. It was his province to tell the jury what the practice was in such cases, and to leave to them the determination of such matters of fact only as in the pursuit of the remedy could be distinctly separated therefrom. No such objection has been made, and no special instruction was prayed that would have corrected the charge in these particulars.

D. C.]                        Syllabus.

(3) In connection with the consideration of exceptions to the charge, we think it proper to call attention to a question of practice.

In this, as in other cases appealed to this court, the practice has been followed of noting in a general bill of exceptions that such parts of the general charge as are included within brackets marking off paragraphs thereof have been excepted to, without stating the specific ground of the objections. This is a loose practice, to say the least of it, and whilst we have considered exceptions so taken when they have presented distinct and controlling questions of law, we will not extend the indulgence to matters of form or of minor consequence.

Errors and omissions in such respects would often be corrected if specifically pointed out at the time or attempted to be corrected by special instructions requested for the purpose.

Having found no reversible error in the proceedings, the judgment will be affirmed, with costs.          *Affirmed.*